UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
and the MICHIGAN DEPARTMENT
OF ENVIRONMENTAL QUALITY,

        Plaintiffs,

v.

CEMEX, INC.,
ST. MARYS CEMENT INC. (U.S.), and
ST. BARBARA CEMENT INC.

        Defendants.

_____/

Civil Action No.

Hon.    **1:06 CV0607**

**Wendell A. Miles**
**Senior, U.S. District Judge**

## COMPLAINT

Plaintiffs, the United States of America, at the request of and on behalf of the

Administrator of the United States Environmental Protection Agency ("the Administrator" and

"U.S. EPA"), and the Michigan Department of Environmental Quality ("MDEQ"), allege as

follows:

### NATURE OF THE ACTION

1.      This is a civil action against Defendants CEMEX, Inc. ("CEMEX"), St. Marys

Cement Inc. (U.S.) ("St. Marys"), and St. Barbara Cement Inc. ("St. Barbara") (collectively,

"Defendants") for injunctive relief and civil penalties pursuant to Section 113(b) of the Clean Air

Act ("CAA"), 42 U.S.C. § 7413(b), and pursuant to Section 5530 of Part 55 of Michigan's

Natural Resources and Environmental Protection Act, M.C.L. § 324.5530, for violations of the

Standards of Performance for New Stationary Sources ("NSPS"), Section 111 of the CAA, 42

U.S.C. § 7411, and regulations promulgated thereunder, codified at 40 C.F.R. Part 60, Subpart F;

and Hazardous Air Pollutants, Section 112 of the CAA, 42 U.S.C. § 7412, and regulations

promulgated thereunder, codified at 40 C.F.R. Part 63, Subpart LLL, for the Portland Cement

Manufacturing Industry.  This action also involves violations of Michigan's CAA

implementation plan, submitted to and approved by the Administrator, under Section 110 of the

CAA, 42 U.S.C. § 7410.  The action is based on violations that occurred at a portland cement

manufacturing facility located at 16000 Bells Bay Road, in Charlevoix, Michigan ("the Facility"), which was owned and operated by CEMEX prior to March 31, 2005, and owned by St. Barbara and operated by St. Marys on and after March 31, 2005.

## JURISDICTION, AUTHORITY, AND VENUE

2.       This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.  In addition, the Court has supplemental jurisdiction over the state law claims of the MDEQ pursuant to 28 U.S.C. § 1367(a).

3.       Authority to bring this action on behalf of the Administrator of U.S. EPA is vested in the United States Department of Justice pursuant to Section 305 of the CAA, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

4.       This Court has jurisdiction over Defendants and venue properly lies in this district pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. § 1391(b) because the violations alleged in this action occurred at a facility located in Charlevoix County, Michigan, which is within this district.  28 U.S.C. § 102(b)(1).

## THE DEFENDANTS

5.       Defendant CEMEX is a subsidiary of CEMEX USA, Inc., and is incorporated under the laws of the State of Texas.  CEMEX's principal place of business is located at 840 Gessner Suite 1400, Houston, Texas 77024.  CEMEX manufactures ready mix concrete and concrete products, including portland cement.  On March 31, 2005, CEMEX sold the Facility to Votorantim Participacoes, S.A., the ultimate parent company of St. Marys and St. Barbara.

6.       Defendant St. Marys is a wholly-owned subsidiary of St. Marys Holdings Inc. (U.S.), a Delaware corporation, which is indirectly wholly-owned by Votorantim Investimentos Internacionais S.A., a Brazilian company that is controlled by Votorantim Participacoes, S.A, also a  Brazilian company.  St. Marys is incorporated under the laws of Delaware and has its principal place of business in Detroit, Michigan.  St. Marys manufactures cement and related

2

construction products in the Great Lakes Region of the United States and Canada. Defendant St. Barbara is a wholly-owned subsidiary of Votorantim Cimentos Americas S.A., a Brazilian company, and is an affiliate of St. Marys. St. Barbara is incorporated under the laws of Delaware and has its principal place of business in Detroit, Michigan. As of March 31, 2005, St. Barbara has owned the Facility, and St. Marys has operated the Facility.

7.      Defendants are "persons" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

8.      CEMEX, at all times relevant to this Complaint until March 31, 2005, and St. Marys, at all times relevant to this Complaint from March 31, 2005, to the present are "operators" within the meaning of Sections 111(a)(5) and 112(a)(9) of the CAA, 42 U.S.C. §§ 7411(a)(5) and 7412(a)(9), and 42 C.F.R. § 63.2.

## STATUTORY AND REGULATORY BACKGROUND
## OF THE CLEAN AIR ACT

### Standards of Performance for New Stationary Sources

9.      The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. *See* Section 101(b)(1) of the CAA, 42 U.S.C. § 7401(b)(1).

10.     Section 111(b)(1) of the CAA, 42 U.S.C. § 7411(b)(1), provides, in relevant part:

   (A)  The Administrator shall, within 90 days after December 31, 1970, publish (and from time to time thereafter shall revise) a list of categories of stationary sources. . . .

   (B)  Within one year after the inclusion of a category of stationary sources in a list under subparagraph (A), the Administrator shall publish proposed regulations, establishing Federal standards of performance for new sources within such category. . . . [and] he shall promulgate, within one year after

3

> such publication, such standards with such modifications as he deems
> appropriate.

11.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), provides that "[a]fter the

effective date of standards of performance promulgated under this section, it shall be unlawful

for any owner or operator of any new source to operate such source in violation of any standards

of performance applicable to such source."

12.     On July 25, 1977, the Administrator promulgated the Standards of Performance

for Portland Cement Plants, 42 Fed. Reg. 37936, codified, as amended, at 40 C.F.R. Part 60,

M.C.L., §§ 60.60 to 60.66 ("Subpart F").

13.     The provisions of Subpart F "are applicable to the following affected facilities in

portland cement plants: kilns, clinker coolers, raw mill systems, finish mill systems, raw mill

dryers, raw material storage, clinker storage, finished product storage, conveyor transfer points,

bagging and bulk loading and unloading systems."  40 C.F.R. § 60.60(a).

## Hazardous Air Pollutants

14.     Section 112(c) of the CAA, 42 U.S.C. § 7412(c), provides, in relevant part:

    (1)     Not later than 12 months after November 15, 1990, the Administrator shall
publish, and shall from time to time, but no less often than every 8 years,
revise, if appropriate, in response to public comment or new information, a
list of all categories and subcategories of major sources and area sources
(listed under paragraph (3)) of the air pollutants listed pursuant to
subsection (b) of this section. . . .

    (2)     For the categories and subcategories the Administrator lists, the
Administrator shall establish emissions standards under subsection (d) of
this section, according to the schedule in this subsection and subsection (e)
of this section.

15.     Section 112(d) of the CAA, 42 U.S.C. § 7412(d), provides, in relevant part:

4

(1)    The Administrator shall promulgate regulations establishing emission

standards for each category or subcategory of major sources and area

sources of hazardous air pollutants listed for regulation pursuant to

subsection (c) of this section in accordance with the schedules provided in

subsections (c) and (e) of this section . . . .

16.    On June 14, 1999, the Administrator promulgated the National Emission
Standards for Hazardous Air Pollutants ("NESHAP") for the Portland Cement Manufacturing
Industry, 64 Fed. Reg. 31925, codified at 40 C.F.R. Part 63, Subpart LLL, §§ 63.1340 to
63.1358.

17.    The NESHAP regulations apply to emission sources at new and existing portland
cement plants which are a major source or an area source as defined in § 63.2. Emission sources
regulated include kilns; clinker coolers; raw mills; finish mills; raw material dryers; raw material,
clinker, or finished product storage bins; conveying system transfer points; bagging systems; and
bulk loading or unloading systems. 40 C.F.R. § 63.1340(a).

## Michigan's Implementation Plan and Part 55 of NREPA

18.    Section 109 of the Clean Air Act, 42 U.S.C. § 7409, requires that the
Administrator promulgate regulations establishing primary and secondary national ambient air
quality standards ("NAAQS") for those air pollutants for which air quality criteria have been
issued pursuant to Section 108 of the CAA, 42 U.S.C. § 7408. The primary NAAQS are to be
adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the
public welfare, from any known or anticipated adverse effects associated with the presence of the
air pollutant in the ambient air.

19.    Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, each state must adopt and
submit to the U.S. EPA for its approval an implementation plan which contains procedures and
regulations for reducing emissions from sources of air pollution within the state as necessary to
achieve the NAAQS.

20.     Michigan has enacted Part 55 of the Natural Resources and Environmental Protection Act, M.C.L. §§ 324.5501 *et seq.* ("Part 55 of NREPA"), to control air pollution in Michigan and to protect and promote the public health. Section 5512 of Part 55 of NREPA, M.C.L. § 324.5512, states that the MDEQ shall promulgate rules for the purposes of, among other things, controlling or prohibiting air pollution and complying with the CAA.

21.     To achieve the NAAQS and satisfy the requirements of Section 110 of the CAA concerning state implementation plans, and pursuant to Section 5512(1) of NREPA, the MDEQ has promulgated numerous administrative rules. Those rules are contained in Michigan's Air Pollution Control Rules and include Rule 370, Mich. Admin. Code R 336.1370 (1979), and Rule 910, Mich. Admin. Code R 336.1910 (1979).

22.     Pursuant to Section 110(a) of the CAA, 42 U.S.C. § 7410(a), the State of Michigan submitted Rule 370 to the Administrator, who, on November 12, 1982, approved the rule as a part of the federally enforceable implementation plan for the State of Michigan. 47 Fed. Reg. 51398.

23.     Pursuant to Section 110(a) of the CAA, 42 U.S.C. § 7410(a), the State of Michigan submitted Michigan Rule 910 to the Administrator, who, on May 6, 1980, approved the rule as a part of the federally enforceable implementation plan for the State of Michigan. 45 Fed. Reg. 29790.

24.     The Facility is subject to a federally enforceable permit, issued by the MDEQ through a permit program approved by the Administrator under Section 110 of the CAA, 42 U.S.C. § 7410, as a part of Michigan's CAA implementation plan, on May 6, 1980. The MDEQ issued Permit No. 700-77A for the Facility on January 30, 1996. The MDEQ issued Permit No. 700-77G for the Facility on February 9, 2006 and voided Permit No. 700-77A.

6

## Enforcement Authority

25.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), U.S. EPA may seek injunctive relief and civil penalties not to exceed $25,000 per day for each violation of the CAA, a rule approved as part of a state's CAA implementation plan, or a permit issued as a part of such an implementation plan. Under U.S. EPA's Civil Monetary Penalty Inflation Adjustment Rule, the amount of the civil penalty to be assessed is $27,500 per day for each violation occurring on or after January 30, 1997, and $32,500 per day for each violation occurring on or after March 14, 2004. 61 Fed. Reg. 69360-01 (Dec. 31, 1996); 69 Fed. Reg. 7121-01 (Feb. 13, 2004).

26.    Pursuant to Section 5530 of Part 55 of NREPA, M.C.L. § 324.5530, the MDEQ may seek injunctive relief and civil fines of up to $10,000 for each violation of Part 55 of NREPA.

## FACTUAL BACKGROUND

27.    Until March 31, 2005, CEMEX manufactured portland cement at the Facility. From March 31, 2005, to the present, St. Marys has manufactured portland cement at the Facility. The Facility has produced cement since 1967, and its SIC Code is 3241.

28.    Operations at the Facility include quarrying; raw materials storage and grinding (raw mill); clinker production in a kiln operated in conjunction with a pre-heater/pre-calciner (pre-heater) tower; clinker cooling and storage; three finishing mills; and bulk product storage with load-out areas for trucks, ships and barges. The kiln is primarily fueled by coal with No. 2 fuel oil used during start-up.

29.    The clinker production system consists of: (1) a four stage suspension pre-heater; (2) a rotary kiln; and (3) a clinker cooler. The pre-heater system functions to pre-calcine the raw material by using the hot combustion gases generated at the kiln. The pre-heater is equipped with a secondary coal fired flash furnace, which is located between the fourth stage and the kiln feed-end housing. Feed material is retained in the pre-heater system for about 30 seconds, where

it is heated to a temperature of about 1400°F. From the pre-heater, the feed material is discharged to the rotary kiln for final calcination.

30.    The rotary kiln is a refractory lined steel drum that is equipped with a direct fired pulverized coal burner located at the opposite end from the feed charge system. As the material flows through the kiln, where the temperature reaches 2700°F, it goes through final calcination and emerges as clinker from the discharge end. The hot clinker is then dumped into the clinker cooler, where it is cooled down to about 150°F by a series of cooling fans before being discharged into the clinker handling and storage system.

31.    To reduce alkalies in the clinker and to control sulfur build up in the raw feed, the rotary kiln has been equipped with a pre-heater bypass exhaust system, where approximately one third of the combustion gasses are vented. These gases are vented from the process at a point just above the inlet of the kiln, and released to the atmosphere after conditioning and filtration in an electro-static precipitator ("ESP") air cleaning system. The balance of the process gasses are routed through the raw mill and then exhausted into the atmosphere through the main stack, after conditioning and filtration in an ESP.

32.    The clinker production process thus has two major emission points: (1) the pre-heater bypass; and (2) the rotary kiln/pre-heater main exhaust.

33.    The pre-heater bypass gasses are treated in the North Conditioning Tower and then are vented to a 250,000 ACFM Western ESP, where particulate matter is removed prior to discharge through a 225-foot concrete stack known as the bypass stack. The bypass stack is equipped with a continuous emissions monitor ("CEM") for measuring opacity.

34.    The rotary kiln/pre-heater exhaust gases are treated in a spray chamber known as the South Conditioning Tower. The exhaust gases are then routed through the raw mill and then through a 400,000 ACFM American Air Filter ESP prior to release into the atmosphere via the 320-foot main stack. The main stack is equipped with a CEM for measuring opacity and a CEM for measuring sulfur dioxide.

8

35.    Exhaust from the clinker cooler is not released into the atmosphere, but is routed through a gravel bed filtration system and then re-circulated back to the clinker cooler and the kiln.

36.    Prior to February 2001, and pursuant to 40 C.F.R. § 60.8, CEMEX completed performance testing at all air emission sources of the Facility identified in this Complaint, and submitted to the Administrator a written report of the results of the performance testing.

## ALLEGATIONS OF VIOLATION

### *NSPS and NESHAP Violations*

### COUNT I
### Opacity Violations (General)
### [40 C.F.R. § 60.62(c) and Special Condition 12 of Permit No. 700-77A]

37.    Paragraphs 1 – 36 of this Complaint are hereby incorporated by reference.

38.    Under 40 C.F.R. § 60.62(c) and Special Condition 12 of Permit No. 700-77A, Defendants are prohibited from causing to be discharged into the atmosphere from any affected facility other than the kiln and clinker cooler any gases which exhibit 10% opacity or greater.

39.    On the following dates, at the following emission sources of the Facility (identified in bold), opacity of discharged gases was observed to be as follows:

(a)    on February 15, 2001, at the **South Conditioning Tower**, visible emissions were 53.5%;

(b)    on March 21, 2001,

    (i)    at the top of the burner building, visible emissions were 22.3% and 13.1% ;

    (ii)    from the ductwork connected to the **Clinker Cooler**, visible emissions were 51.2%;

(c)    on June 14, 2001, at the **Loading Silo Baghouse**, visible emissions were 26%;

(d)    on June 25, 2001,

    (i)    at the **A-Frame Storage Building**, visible emissions

were 21.7%;

    (ii)    at the **Finish Mill, #3 Stack**, visible emissions were 19.4%;

    (iii)    at the **South Conditioning Tower**, visible emissions were 58.3%;

(e)    on July 24, 2001, at the **North Conditioning Tower**, visible emissions were 60.6%;

(f)    on July 25, 2001, at the **Clinker Bucket Elevator Bypass Chute**, visible emissions were 99.6%;

(g)    on June 6, 2002, at the **South Conditioning Tower Enclosure**, visible emissions were 37.1%.

40.    CEMEX's discharge of gases from each emission source and on the dates identified in Paragraph 39 violated 40 C.F.R. § 60.62(c) and Special Condition 12 of Permit No. 700-77A.

41.    As a result of CEMEX's violations of 40 C.F.R. § 60.62(c) and Special Condition 12 of Permit No. 700-77A, as set forth in Paragraph 39, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

**COUNT II**
**Opacity Violations (Kiln)**
**[40 C.F.R. § 60.62(a)(2); 40 C.F.R. § 63.1343(b)(2);**
**and Special Condition 11 of Permit No. 700-77A; and**
**Special Condition 5.2 of Permit 700-77G]**

42.    Paragraphs 1 – 41 of this Complaint are hereby incorporated by reference.

43.    Under 40 C.F.R. § 60.62(a)(2), prior to June 14, 2002, and under Special Condition 11 of Permit No. 700-77A, CEMEX was prohibited from causing to be discharged into the atmosphere from any kiln any gases which exhibit greater than 20% opacity.

44.    Under 40 C.F.R. § 63.1343(b)(2), effective June 14, 2002, and Special Condition 11 of Permit No. 700-77A, and Special Condition 5.2 of Permit 700-77G, Defendants were and are prohibited from causing to be discharged into the atmosphere from any kiln any gases which exhibit greater than 20% opacity.

10

45.    At the Facility, gases are discharged from the kiln into the atmosphere through the **Main Stack** and the **Bypass Stack.**

46.    On 754 days during the period January 2001 through March 2004, at the **Main Stack** of its facility, CEMEX released gases from its kiln into the atmosphere with recorded opacity that exceeded 20%. For example, during March 2002, CEMEX's opacity exceeded 20% during 7.17% of its operating time, exceedances occurring on March 3, 4, 7, 9, 15, 17, 25, and 26. The level of exceedance during this period was high, including at least one visible emission with opacity of 100%, which is 400% above the opacity limit.

47.    Emissions at the **Bypass Stack** of the Facility exceeded 20% opacity during 7.07% of its operating time during May 2002, exceedances occurring on May 3, 4, 5, 6, 7, 8, 9, and 21.

48.    CEMEX's discharge of gases from its **Main Stack** prior to June 14, 2002, and from its **Bypass Stack,** as identified in Paragraphs 46 and 47, violated 40 C.F.R. § 60.62(a)(2) and Special Condition 11 of Permit No. 700-77A. CEMEX's discharge of gases from its Main Stack on or after June 14, 2002, as identified in Paragraph 46, violated 40 C.F.R. § 63.1343(b)(2) and Special Condition 11 of Permit No. 700-77A.

49.    As a result of CEMEX's violations of 40 C.F.R. § 60.62(a)(2), 40 C.F.R. § 63.1343(b)(2), and Special Condition 11 of Permit No. 700-77A, as set forth in Paragraphs 46 and 47, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder. In addition, St. Marys and St. Barbara are liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b) for ongoing violations of 40 C.F.R. § 60.62(a)(2), 40 C.F.R. § 63.1343(b)(2), and Special Condition 5.2 of Permit No. 700-77G, and subject to civil penalties thereunder, and responsible for performing injunctive relief necessary to remedy those ongoing violations.

11

## COUNT III
### Opacity Violations (Clinker Cooler) [40 C.F.R. § 60.62(b)(2) and Special Condition 12 of Permit No. 700-77A]

50.     Paragraphs 1 – 49 of this Complaint are hereby incorporated by reference.

51.     Under 40 C.F.R. § 60.62(b)(2) and Special Condition 12 of Permit No. 700-77A, Defendants are prohibited from causing to be discharged into the atmosphere from any clinker cooler any gases which exhibit greater than 10% opacity.

52.     At the Facility's **Clinker Cooler/Gravel Bed Stack**, during February 2001, opacity exceeded 10% during 8.30% of its operating time, exceedances occurring on February 11, 12, 13, and 27.

53.     CEMEX's discharge of gases with greater than 10% opacity from its **Clinker Cooler/Gravel Bed Stack**, as set forth in Paragraph 52, violated 40 C.F.R. § 60.62(b)(2) and Special Condition 12 of Permit No. 700-77A.

54.     As a result of CEMEX's violations of 40 C.F.R. § 60.62(b)(2) and Special Condition 12 of Permit No. 700-77A, as identified in Paragraph 52, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

### *NESHAP Violations*

## COUNT IV
### Opacity Violations (Storage, Conveyance, Bagging, and Loading Systems) [40 C.F.R. § 63.1348 and Special Condition 12 of Permit No. 700-77A]

55.     Paragraphs 1– 54 of this Complaint are hereby incorporated by reference.

56.     Under 40 C.F.R. 63.1348 and Special Condition 12 of Permit No. 700-77A, Defendants are prohibited from causing to be discharged in the atmosphere from any affected facility storage bin; conveying system transfer point; bagging system; bulk loading or unloading system; and each existing raw material dryer, gases which exhibit greater than 10% opacity.

57.     On the following dates, at the following emission sources of the Facility, opacity of discharged gases was observed to be as follows:

        (a)     on June 25, 2002, at the **North Conditioning Tower**, visible emissions

12

were 18.8% and 18.3%; at the **transfer point where the No. 8 screw drops onto the M-90 belt**, visible emissions were 36.9% and 33.3%; and, at the **clinker silo storage building**, visible emissions were 21.2%;

(b)    on August 20, 2002, at the **cement silos**, visible emissions were 77.1%, 70.8%, 72.3%, 52.9%, 68.5%, 72.9%, 73.5%, and 44.8%;

(c)    on October 8, 2002, at the **screw under the G-cooler**, visible emissions were 49.0%; and at the **transfer point where the No. 8 screw drops onto the M-90 belt**, visible emissions were 35.2% and 32.1%;

(d)    on October 28, 2002, at the **conveyor which connects the two clinker domes**, visible emissions were 54.0% and 52.3%;

(e)    on October 29, 2002, at the **A-frame building**, visible emissions were 19.0%, 12.5%, 24.2%, 18.8%, and 21.7%; at the **North Conditioning Tower**, visible emissions were 23.3% and 20.0%; and, at the **No. 2 Clinker Dome**, visible emissions were 15.8%.

58.    Visible emissions from each of the locations at the Facility identified in Paragraph

57 are subject to 40 C.F.R. § 63.1348 and Special Condition 12 of Permit No. 700-77A.

59.    CEMEX's exceedance of its 10% opacity limit, as identified in Paragraph 57,

violated 40 C.F.R. § 63.1348 and Special Condition 12 of Permit No. 700-77A, and,

consequently, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and

subject to civil penalties thereunder.

## COUNT V
### Operating Violations (Kiln Inlet Temperature)
### [40 C.F.R. §§ 63.1344(a) and (b)]

60.    Paragraphs 1- 59 of this Complaint are hereby incorporated by reference.

61.    The Facility's **inline kiln/raw mill** and **bypass stack** are subject to a dioxin/furan

emission limitation under 40 C.F.R. § 63.1343.

62.    Under 40 C.F.R. § 63.1344(a), the kiln at the Facility must be operated such that

the temperature of the gas at the inlet to the kiln particulate matter control device and alkali

bypass particulate matter control device, if applicable, does not exceed the applicable

temperature limit specified in 40 C.F.R. § 63.1344(b).

13

63.     Under 40 C.F.R. § 63.1344(b), the temperature limit for affected sources meeting the limits of 40 C.F.R. § 63.1344(a) is to be determined in accordance with 40 C.F.R. § 63.1349(b)(3)(iv).

64.     At some time prior to 2002, CEMEX, consistent with 40 C.F.R. § 63.1344(a), determined that the temperature limits for its dioxin/furan control equipment at its **inline kiln/raw mill main stack** and its **bypass stack** were 223.6° F and 344.4° F, respectively.

65.     In its operation of its dioxin/furan control equipment CEMEX exceeded its inlet temperature limits, identified in Paragraph 64, as follows:

> (a)     at its **inline kiln/raw mill main stack**, from July 1, 2002, through December 31, 2002, during 11.74% of the operating time, and, from January 1, 2003, through June 30, 2003, during 6.12% of the operating time;

> (b)     at its **kiln bypass stack**, from July 1, 2003, through December 31, 2003, during 27% of the operating time.

66.     CEMEX's exceedance of its inlet temperature limits, as identified in Paragraph 65, violated 40 C.F.R. § 63.1334(a) and (b).

67.     As a result of CEMEX's violations of 40 C.F.R. §§ 63.1344(a) and (b), as set forth in Paragraph 65, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

## COUNT VI
### Operating Violations (Failure to Perform Monthly 1-Minute Visible Emissions Testing) [40 C.F.R. § 63.1350(a)(4)(I)]

68.     Paragraphs 1 – 67 of this Complaint are hereby incorporated by reference.

69.     Under 40 C.F.R. § 63.1350(a)(4)(I), Defendants are required to conduct a monthly 1-minute visible emissions test of each affected source, in accordance with Method 22 of Appendix A to Part 60 of the Administrator's Rules.

14

70. During each month, from January 2003 through September 2003, CEMEX failed to perform monthly 1-minute visible emissions testing of each affected source at the Facility, in accordance with Method 22 of Appendix A to Part 60 of the Administrator's Rules.

71. CEMEX's failure to conduct monthly 1-minute visible emissions tests as identified in Paragraph 70, violated 40 C.F.R. § 63.1350(a)(4)(i). Consequently, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

## COUNT VII
### Operating Violations (Failure to Perform Daily Visible Emissions Observations) [40 C.F.R. § 63.1350(e)]

72. Paragraphs 1– 71 of this Complaint are hereby incorporated by reference.

73. Under 40 C.F.R. § 63.1350(e), Defendants must monitor opacity by conducting daily visual emissions observations of the mill sweep and air separator particulate matter control devices of its Finish Mill, in accordance with the procedures of Method 22 of Appendix A of part 60 of that chapter.

74. On the following days, between July 2, 2002, and November 30, 2003, CEMEX failed to conduct daily visual emissions observations of the **mill sweep and air separator particulate matter control devices at its Finish Mill**:

> July 2, 24, and 30, 2002;
> August 21, 22, 23, 24, 25, and 26, 2002;
> September 6, 10, 25, 29 and 30, 2002;
> October 3, 4, and 7, 2002;
> November 7, 8, 11, and 19, 2002;
> December 11, 21, 24, and 25, 2002;
> January 3, 2003;
> February 9, 10, 19, 20, 21, 22, 2003;
> March 31, 2003;

15

April 1, 2, 3, 14, 2003;

May 11, 12, 13, 14, 15, 16, 2003;

June 20, 22, 23, 30, 2003;

July 1, 7, 13, 14, 15, 20, 21, 23, 28, 2003;

August 5, 6, 7, 22, 2003;

September 2, 6, 21, 24, 29, 2003;

October 1, 2, 19, 20, 2003;

November 12, 16, 21, and 28, 2003.

75.     CEMEX's failure to conduct daily visual emissions observations as identified

in Paragraph 74, violated 40 C.F.R. § 63.1350(e). Consequently, CEMEX is liable under

Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

***Michigan CAA Implementation Plan Violations***

### COUNT VIII
### Operating Violations
### [Michigan Rule 370]

76.     Paragraphs 1– 75 of this Complaint are hereby incorporated by reference.

77.     Under Michigan Rule 370, Defendants must remove collected air contaminants as

necessary to maintain equipment at the required operating efficiency, and must perform

collection and disposal of these contaminants in a manner so as to minimize the introduction of

contaminants to the outside air.

78.     Kiln dust generated at the Facility's **North Conditioning Tower** and **Pug Mill** is

an air contaminant.

79.     Michigan Rule 370 applies to the Facility's generation of kiln dust at its **North

Conditioning Tower** and **Pug Mill**.

80.     On February 22, 2002, CEMEX released kiln dust from its **North Conditioning

Tower** and **Pug Mill** into the outer air; the area between the tower and pug mill was covered

16

with a large amount of such dust; and substantial amounts of kiln dust, which was not wetted, stored in a large pile near the tower.

81.     On December 2, 2003, CEMEX allowed cement kiln dust to be sent to the **North Conditioning Tower enclosure**, which became spread over the ground in the area around the tower and released into the atmosphere.

82.     CEMEX's release and handling of kiln dust, as described in Paragraphs 80 and 81, constitutes a failure of CEMEX to collect and remove its air contaminants so as to operate its equipment efficiently and to minimize the introduction of contaminants to the outside air, which is a violation of Michigan Rule 370. Consequently, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

## COUNT IX
## Operating Violations [Michigan Rules 370 and 910]

83.     Paragraphs 1 - 82 of this Complaint are hereby incorporated by reference.

84.     Michigan Rule 910 provides that an air-cleaning device shall be installed, maintained, and operated in a satisfactory manner and in accordance with the Michigan implementation plan rules and existing law.

85.     Prior to June 6, 2002, CEMEX installed at the Facility a **secondary baghouse crusher** for the purpose of collecting particulate matter and preventing the release of visible emissions to the outside air.

86.     Prior to June 6, 2002, CEMEX installed at its facility a **gravel bed filter** for the purpose of collecting clinker fines and preventing their release to the outside air.

87.     The clinker fines generated at the **gravel bed filter** of the Facility are air contaminants.

88.     Michigan Rules 370 and 910 apply to operation of the Facility's **secondary baghouse crusher** and its **gravel bed filter**.

17

89.     On June 6, 2002, during the course of its operations at the facility, CEMEX released visible emissions from the **secondary baghouse crusher** at the Facility.

90.     On June 6, 2002, during the course of its operations at the Facility, CEMEX released visible emissions from the **gravel bed filter** at the facility.

91.     CEMEX's release of visible emissions from its **secondary baghouse crusher** and **gravel bed filter**, as identified in Paragraphs 89 and 90, constitutes a failure of CEMEX to collect and remove its air contaminants so as to operate its equipment efficiently and to minimize the introduction of contaminants to the outside air, which is a violation of Michigan Rule 370. Consequently, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

92.     CEMEX's release of visible emissions from its **secondary baghouse crusher** and **gravel bed filter**, as identified in Paragraphs 89 and 90, constitutes a failure of CEMEX to maintain and operate its air cleaning device in a satisfactory manner and in accordance with the Michigan implementation plan rules and existing law, which is a violation of Michigan Rule 910. Consequently, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

### COUNT X
### Operating Violations [Special Condition 17 of Permit No. 700-77A]

93.     Paragraphs 1 – 92 of this Complaint are hereby incorporated by reference.

94.     Under Special Condition 17 of Permit No. 700-77A, Defendants are required to continuously monitor for sulfur dioxide emissions at its facility.

95.     From October through December 2003, CEMEX failed to operate its sulfur dioxide monitor during 7.32% of its operating time.

18

96.     CEMEX's failure to operate its sulfur dioxide monitor, as identified in Paragraph 95, violated Special Condition 17 of Permit No. 700-77A.  Consequently, CEMEX is liable under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and subject to civil penalties thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the Michigan Department of Environmental Quality, pray that this Court enter judgment in its favor against Defendants, and that this Court:

A.     Enjoin Defendants St. Marys and St. Barbara from further violations of the Standards of Performance for New Stationary Sources, Section 111 of the CAA, 42 U.S.C. § 7411, and regulations promulgated thereunder at 40 C.F.R. Part 60, Subpart F; of the Hazardous Air Pollutants, Section 112 of the CAA, 42 U.S.C. § 7412, and regulations promulgated thereunder at 40 C.F.R. Part 63, Subpart LLL, for the Portland Cement Manufacturing Industry (NESHAP); and federally enforceable rules and permits in Michigan's CAA implementation plan;

B.     Require Defendants St. Marys and St. Barbara to provide such affirmative injunctive relief as necessary to ensure the Facility's compliance with the CAA provisions and implementing regulations set forth above in Paragraph A;

C.     To the extent of their respective liability for past and ongoing CAA violations as set forth in this Complaint, assess civil penalties against Defendants of not more than $27,500 per day per violation, and $32,500 per day for each violation occurring on or after March 14, 2004.  61 Fed. Reg. 69360-01 (Dec. 31, 1996); 69 Fed. Reg. 7121-01 (Feb. 13, 2004);

D.     Award the United States and the Michigan Department of Environmental

Quality its costs and disbursements incurred in this action; and

E.     Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C.  20530

DEBORAH M. REYHER
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4113

MARGARET M. CHIARA
United States Attorney

JENNIFER L. McMANUS
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan  49501-0208
(616) 456-2404

OF COUNSEL:

RICHARD R. WAGNER, Attorney
Office of Regional Counsel
U.S. Environmental Protection
 Agency, Region V
230 South Dearborn Street
Chicago, Illinois  60604
(312) 886-7947

20

MICHAEL A. COX
Attorney General
State of Michigan

NEIL D. GORDON
Assistant Attorney General
Michigan Department of Attorney General
Environment, Natural Resources
and Agriculture Division
P.O. Box 30217
Lansing, Michigan 48909
Attorney for the Michigan Department of
Environmental Quality
(517) 373-7540

21