UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
and the MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY,

                    Plaintiffs,

      v.

CEMEX, INC.,
ST. MARYS CEMENT INC. (U.S.), and
ST. BARBARA CEMENT INC.

                Defendants.

_____/

1:06 CV0607

Civil Action No._____ Wendell A. Miles
Senior, U.S. District Judge

CONSENT DECREE

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.      COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI.     SUPPLEMENTAL ENVIRONMENTAL PROJECT . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.    REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII.   STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IX.     FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

X.      DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XI.     INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . . . 25

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . . . 27

XIII.   COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XIV.    NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XV.     EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

XVI.    RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

XVII.   MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XVIII.  TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XIX.    PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XX.    SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XXI.   INTEGRATION/ATTACHMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XXII.  FINAL JUDGMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XXIII. ATTACHMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the Michigan Department of Environmental Quality ("MDEQ") have filed a complaint in this action concurrently with the lodging of this Consent Decree alleging that Defendants CEMEX, Inc. ("CEMEX"), St. Marys Cement Inc. (U.S.) ("St. Marys"), and St. Barbara Cement Inc. ("St. Barbara") violated Sections 110, 111 and 112 of the Clean Air Act, 42 U.S.C. §§ 7410, 7411, 7412 ("Act" or "CAA"), and Part 55 of Michigan's Natural Resources and Environmental Protection Act, M.C.L. §§ 5501-42 ("Part 55 of NREPA").

The complaint against Defendants seeks injunctive relief and civil penalties pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to Section 5530 of Part 55 of the NREPA, M.C.L. § 324.5530, for alleged violations of the Standards of Performance for New Stationary Sources (NSPS), Section 111 of the CAA, 42 U.S.C. § 7411, and regulations promulgated thereunder, codified at 40 C.F.R. Part 60, Subpart F; and Hazardous Air Pollutants (HAP), Section 112 of the CAA, 42 U.S.C. § 7412, and regulations promulgated thereunder, codified at 40 C.F.R. Part 63, Subpart LLL, for the Portland Cement Manufacturing Industry.  This action also involves alleged violations of Michigan's CAA implementation plan, submitted to and approved by the Administrator, under Section 110 of the CAA, 42 U.S.C. § 7410.  The action is based on alleged violations that occurred at a portland cement manufacturing facility located at 16000 Bells Bay Road, in Charlevoix, Michigan (the "Facility"), which was owned and operated by CEMEX prior to March 31, 2005, and owned by St. Barbara and operated by St. Marys on and after March 31, 2005.

The complaint alleges that, at numerous locations within the Facility, including but not limited to the kiln, the clinker cooler, and the south conditioning tower, opacity exceeded

applicable NSPS and NESHAP limitations, 40 C.F.R. §§ 60.62(a)(2), 60.62(b)(2), 60.62(c), 63.1343(b)(2), and violated special conditions of its permit, Special Conditions 11 and 12 of Permit No. 700-77A. The complaint also alleges operating violations, including that the kiln exceeded the applicable inlet temperature limit for dioxins/furans, in violation of 40 C.F.R. §§ 1344(a),(b), that visible emissions testing and observations were not performed, in violation of 40 C.F.R. §§ 63.1350(a)(4)(i), and 63.1350(e), that cement kiln dust was released in violation of Michigan Rule 370 of Michigan's Air Pollution Control Rules, Mich. Admin. Code R. 336.1370 (1979), that emissions from the Facility's secondary crusher baghouse and gravel bed filter violated Rule 370 and Rule 910 of Michigan's Air Pollution Control Rules, Mich. Admin. Code R.336.1910 (1979), and that sulfur dioxide was not continuously monitored for certain periods of time, in violation of Special Condition 17 of Permit No. 700-77A.

Defendants do not admit any liability to the United States or MDEQ arising out of the transactions or occurrences alleged in the Complaint. Entry of this Consent Decree does not constitute an admission of any fact or that the law has been violated, nor is it evidence of the same.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant

to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and

1355, and 1367(a), and over the Parties.  Venue lies in this District pursuant to Section 113(b) of

the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. § 1391(b), because the violations

alleged in this action occurred at a facility located in Charlevoix County, Michigan, which is

within this district.  28 U.S.C. § 102(b)(1). For purposes of this Decree, or any action to enforce

this Decree, Defendants consent to the Court's jurisdiction over this Decree or such action and

over Defendants, and consent to venue in this judicial district.

## II.  APPLICABILITY

2.      The obligations of this Consent Decree apply to and are binding upon the

United States and the MDEQ; and upon Defendants, their agents, successors, and assigns.

3.      Any transfer of ownership or operation of the Facility to any other person

must be conditioned upon the transferee's agreement to undertake the obligations required by this

Decree, as provided in a written agreement between Defendant St. Marys (and/or its parent

company and/or St. Barbara) and the proposed transferee, enforceable by the United States and

the MDEQ as third-party beneficiaries of such agreement.  At least 30 days prior to such transfer,

Defendant St. Marys shall provide a copy of this Consent Decree to the proposed transferee and

shall simultaneously provide written notice of the prospective transfer, together with a copy of

the proposed written agreement, to EPA Region V, the United States Attorney for the Western

District of Michigan, the United States Department of Justice, and the MDEQ, in accordance

with Section XIV of this Decree (Notices).  Any attempt to transfer ownership or operation of the

Facility without complying with this Paragraph constitutes a violation of this Decree. No transfer of ownership or operation of the Facility, whether in compliance with this Paragraph or otherwise, shall relieve Defendants of their obligations to ensure that the terms of the Decree are implemented.

        4.        Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree. Notwithstanding any retention of contractors to perform any work required under this Consent Decree, Defendants shall be responsible for ensuring that all work is performed in accordance with the requirements of this Consent Decree.

        5.        In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

III. DEFINITIONS

        6.        Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated pursuant to the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

        a.        "Complaint" shall mean the complaint filed by the United States and the MDEQ in this action;

-4-

b.      "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIII);

c.      "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day;

d.      "Defendants" shall mean CEMEX, Inc., St. Marys Cement Inc.(U.S.), and St. Barbara Cement Inc.;

e.      "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

f.      "Facility" shall mean the Portland cement manufacturing facility located at 16000 Bells Bay Road, in Charlevoix, Michigan, which was owned and operated by Defendant CEMEX prior to March 31, 2005, and owned by St. Barbara and operated by St. Marys on and after March 31, 2005;

g.      "MDEQ" shall mean the Michigan Department of Environmental Quality and any successor departments or agencies of the State of Michigan;

h.      "Paragraph" shall mean a portion of this  Decree identified by an arabic numeral;

i.      "Parties" shall mean the United States, the MDEQ, and Defendants;

j.      "Section" shall mean a portion of this Decree identified by a roman numeral;

k.    "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

7.    Within 30 days after the Effective Date of this Consent Decree, Defendant CEMEX shall pay  the sum of $1,359,422, as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961.  The payment shall be made as follows:

a.    Fifty percent of the penalty, or $679,711, together with 50 percent of the accrued interest, shall be paid to the United States.  Payment to the United States shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendants within 30 days after lodging of the Consent Decree by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Michigan.  At the time of payment to the United States, Defendant CEMEX or Defendant St. Marys shall simultaneously send written notice of payment and a copy of any transmittal documentation (which should reference DOJ case number 90-5-2-1-08077, U.S. Attorney's Office file number 2003V00416, and the civil action number of this case) to the United States in accordance with Section XIV of this Decree (Notices).

b.    Fifty percent of the penalty, or $679,711, together with 50 percent of the accrued interest, shall be paid to the MDEQ. Payment shall be made in the form of a certified check or cashier's check, and payable to the "State of Michigan." Payment shall be sent to the Michigan Department of Environmental Quality, Cashier's Office, P.O. Box 30657, 525 West Allegan Street, Lansing,  MI 48909.  To ensure proper credit, the check must reference

United States et al. v. CEMEX, Inc. et al., the Civil Action Number and the Air Quality Division Account Number AQD3269.

        8.     Neither Defendant CEMEX nor Defendant St. Marys shall deduct the civil penalty paid under this Section in calculating its federal or Michigan income tax.

## V.  COMPLIANCE REQUIREMENTS

        9.     Compliance with Applicable Law.  All work undertaken by Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal, state and local laws, permits, and regulations not addressed in this Consent Decree, including without limitation, federal and state regulations governing the generation, treatment, storage, transport, and disposal of hazardous waste.  In addition, Defendant St. Marys shall, in operating the Facility, comply with the following regulatory and permit requirements:

        a.     40 C.F.R. § 63.1348;

        b.     40 C.F.R. § 63.1344(a);

        c.     40 C.F.R. § 63.1350(a)(4)(i);

        d.     40 C.F.R. § 63.1350(e);

        e.     Rule 370 of Michigan's Air Pollution Control Rules, Mich. Admin. Code R. 336.1370 (1979);

        f.     Rule 910 of Michigan's Air Pollution Control Rules, Mich. Admin. Code R.336.1910 (1979);

        Defendant St. Marys shall report any violations of the foregoing regulatory and permit requirements in the reports it submits pursuant to Paragraph 23 of this Consent Decree.

-7-

10.     Defendant St. Marys shall:

a.     Install at the Facility's in-line kiln/raw mill a new fabric filter baghouse pursuant to Permit No. 700-77G to remedy the alleged ongoing opacity violations at the main stack of the in-line kiln/raw mill.  The new fabric filter baghouse ("main stack baghouse") shall be installed in accordance with the following schedule:

i.     Initiate on-site installation of the main stack baghouse on or before April 15, 2006;

ii.     Complete on-site installation of the main stack baghouse on or before May 30, 2006;

iii.     Commence operation of the main stack baghouse on or before June 30, 2006;

iv.     Comply with 40 C.F.R. § 1343(b)(2) for the in-line kiln/raw mill on and after July 30, 2006.

v.     Conduct compliance testing in accordance with 40 C.F.R. § 63.1349(b)(1)(iv) to verify particulate matter emission rates and dioxin/furan emission rates from the in-line kiln/raw mill on or before September 30, 2006.

vi.     Submit test reports for the in-line kiln/raw mill which demonstrate compliance in accordance with 40 C.F.R. § 63.1343(b), on or before November 30, 2006.

11.     Permits.  Where any compliance obligation under this Section requires Defendant St. Marys to obtain a federal, state, or local permit or approval, Defendant St. Marys shall submit timely and complete applications and take all other actions necessary to obtain all

-8-

such permits or approvals.  Defendant St. Marys may seek relief under the provisions of Section IX (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant St. Marys has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

VI.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

12.     Defendants shall install as a Supplemental Environmental Project ("SEP"), an indirect firing system for the Facility's kiln.  Defendants CEMEX and St. Marys are jointly and severally liable for the installation of the SEP, but Defendant St. Marys, as the current operator of the Facility, shall physically install, implement, and operate the SEP.  The indirect firing system will replace the existing burning system at the Facility's kiln.  It is anticipated that the SEP will result in a net reduction in coal used from 3.31 MMBtu per ton of clinker to 3.17 MMBtu per ton of clinker, reduced particulate matter emissions because of improved flame stability and kiln operation, up to a 20 percent reduction in nitrogen oxide emissions because of reduced air in the combustion zone, and reduced sulfur dioxide emissions on a per ton of clinker basis because of the decrease in coal consumption.  It is understood by the Parties that the anticipated results set forth in the preceding sentence are not guaranteed, and therefore Plaintiffs will not require Defendants to demonstrate that such results have been achieved in determining whether they have achieved "satisfactory completion" of the SEP, as that phrase is defined in Paragraph 15, below.

13.     The SEP will be installed and implemented in accordance with Permit No. 700-77G, and will meet the specifications set forth in Attachment B.  In implementing the SEP,

Defendants shall spend not less than $6,274,590 in eligible SEP costs, and operate the SEP for a minimum of 5 years after the Effective Date of the Consent Decree.  Eligible SEP costs include the costs of planning and implementing the SEP, but do not include inventory on hand.

14.     The SEP shall be implemented according to the following schedule:

a.     Begin construction of the indirect firing system on or before March 1, 2006;

b.     Complete construction of the indirect firing system on or before June 1, 2006;

c.     Commence operation of the indirect firing system on or before July 1, 2006.

15.     Defendants are responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  "Satisfactory completion" means that Defendants shall complete the work in accordance with all specifications for the project set forth in Paragraph 13 and Attachment B, and shall spend not less than the amount set forth in Paragraph 13.  Defendants may use contractors and/or consultants in planning and implementing the SEP, subject to Paragraph 4, above.

16.     Defendant St. Marys certifies that all cost information provided to Plaintiffs in connection with Plaintiffs' approval of the SEP is complete and accurate and represents a fair estimate of the costs necessary to implement the SEP.

17.     Defendants certify the truth and accuracy of each of the following:

a.     That, as of the date of executing this Decree, Defendants are not required to perform or develop the SEP by any federal, state, or local law or regulation, nor are

Defendants required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

        b.     That the SEP is not a project that Defendants were planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

        c.     That Defendants have not received, and are not negotiating to receive, credit for the SEP in any other enforcement action; and

        d.     That Defendants will not receive any reimbursement for any portion of the SEP from any third party.

        18.     <u>SEP Completion Report</u>

        a.     On or before October 1, 2006, Defendant St. Marys shall submit a SEP Completion Report to the United States and the MDEQ, in accordance with Section XIV of this Consent Decree (Notices). The SEP Completion Report shall contain the following information:

        i.     A detailed description of the SEP as implemented;

        ii.     A description of any problems encountered in completing the SEP and the solutions thereto;

        iii.     An itemized list of all eligible SEP costs;

        iv.     Certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

        v.     A description of the environmental and public health benefits resulting from implementation of the SEP, with a quantification of the benefits and

-11-

pollutant reductions by demonstrating nitrogen oxide and sulfur dioxide emission reductions based on:

(1)      the reduction in the amount of coal used per ton of clinker produced;

(2)      a comparison of the pounds of nitrogen oxide and sulfur dioxide emissions per ton of clinker produced derived from continuous emission monitoring data for a 30-day period before and a 30-day period after the installation of the main stack baghouse and the indirect firing system.  Each 30-day period shall be representative of normal operating conditions, during which the kiln/raw mill is operating at or near maximum capacity, and shall incorporate use of substantially similar raw materials in substantially similar proportions.  Defendant St. Marys shall document operating parameters, raw material usage and quantitative proportions of the material used per day during each 30-day period.  The reporting requirements set forth in this Paragraph do not alter the criteria for determining whether satisfactory completion of the SEP has been achieved, which is limited to that which is set forth in Paragraph 15.

19.      Plaintiffs may require information in addition to that described in the preceding Paragraph, in order to determine the adequacy of SEP completion or eligibility of SEP costs, but the criteria for determining whether satisfactory completion of the SEP has been achieved shall be limited to that which is set forth in Paragraph 15.

20.      Within 180 days after receiving the SEP Completion Report, the United States and the MDEQ shall notify Defendants whether Defendants have satisfactorily completed the SEP in accordance with the criteria set forth in Paragraph 15.  If Plaintiffs believe that the

-12-

SEP has not been satisfactorily completed in accordance with the criteria set forth in Paragraph 15, Plaintiffs shall specify the basis and reasons for such assertion and shall provide Defendants an opportunity to cure such issues within 180 days. Stipulated Penalties may be assessed under Section VIII of this Consent Decree for failure to complete the SEP only if the criteria in Paragraph 15 have not been satisfied, and only after a cure has been attempted, but failed.

      21.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in 26, below.

      22.     Any public statement, oral or written, in print, film, or other media, made by Defendants publicizing the SEP from the date of lodging of this Decree shall include the following language, "This project was undertaken in connection with the settlement of an enforcement action, United States v. Cemex, Inc. and St. Marys Cement Inc. (U.S.), taken on behalf of the U.S. Environmental Protection Agency and the Michigan Department of Environmental Quality under the Clean Air Act and the Michigan Natural Resources and Environmental Protection Act."

## VII. REPORTING REQUIREMENTS

      23.     Defendants shall submit the following reports:

      a.     On or before March 15th of each year after entry of this Consent Decree by the Court, until termination of this Decree pursuant to Section XVIII, Defendant St. Marys shall submit to EPA and the MDEQ an annual report for the preceding year that shall include a discussion of the status of the installation of the main stack baghouse and a discussion of Defendants' progress in satisfying their obligations in connection with the indirect firing system SEP under Section VI of this Decree including, at a minimum, a narrative description of

-13-

activities undertaken and an itemization (with copies of supporting documentation) of costs incurred since the previous report.

           b.     If any Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, that Defendant shall notify the United States, the MDEQ, and the other Defendants of such violation and its likely duration in writing within ten working days of the day the Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, and/or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, the Defendant shall include a statement to that effect in the report.  The Defendant shall investigate to determine the cause of the violation and then shall submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day the Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligations to provide the requisite notice for purposes of Section IX (Force Majeure).

           24.    In the case of any violation of this Consent Decree or other event that may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and the MDEQ orally or by electronic or facsimile transmission as soon as possible, but not later than 24 hours after the Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

           25.    All reports shall be submitted to the persons designated in Section XIV of this Consent Decree (Notices).

26.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gathered and presented the information contained therein. I further certify, based on my personal knowledge or on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing and willful submission of a materially false statement.

27.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

28.     Any information provided pursuant to this Consent Decree may be used by the United States or the MDEQ in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.    STIPULATED PENALTIES

29.     If Defendant CEMEX fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant CEMEX shall pay a stipulated penalty of $10,000 per day for each day that the payment is late. Late payment of the civil penalty shall be made in accordance with Section IV, Paragraphs 7(a) and 7(b), above. Stipulated penalties shall be paid in accordance with Section VIII, Paragraph 38, below. All transmittal correspondence shall state that any such payment is for late payment of the civil

penalty due under this Decree, or for stipulated penalties for late payment, as applicable, and shall include the identifying information set forth in Paragraphs 7(a) and 7(b).

30.     Defendants shall be liable for stipulated penalties to the United States and the MDEQ for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

31.     Compliance Milestones

a.     The following stipulated penalties shall accrue against Defendant St. Marys per violation per day for each violation of the requirements identified in Subparagraphs b and c:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th day |
| $2,500 | 15th through 30th day |
| $5,000 | 31st day and beyond |

b.     Regulatory and Permit Requirements: These requirements are set forth in Paragraphs 9(a) through 9(f), inclusive, and incorporated by reference in this subparagraph.

c.     Main Stack Baghouse Requirements: The milestones for installation and implementation of the main stack baghouse, and each milestone's deadline, are set forth in Subparagraphs 10(a)(i) through 10(a)(vi), inclusive, and are incorporated by reference

-16-

in this Subparagraph. Stipulated penalties assessed pursuant to this Paragraph shall accrue from the date Defendants were required to meet the applicable milestone, until compliance with the milestone is achieved. Notwithstanding the preceding sentence, no stipulated penalties for violations of the requirements in Subparagraphs 10(a)(i) through 10(a)(vi) shall accrue if the in-line kiln/raw mill is not in operation.

      32.    <u>Reporting Requirements</u>. The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements of Section VII of this Consent Decree (Reporting Requirements):

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $750 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st day and beyond |

      33.    <u>SEP Compliance</u>

        a.    If Defendants have spent less than the amount set forth in Paragraph 13, above, Defendants shall pay a stipulated penalty equal to the difference between the amount of total eligible SEP costs incurred by Defendants and the amount set forth in Paragraph 13.

        b.    If Defendants have completed the SEP, but have not achieved "satisfactory completion" of the SEP as provided in Paragraph 15, Defendants shall pay $500,000, in addition to any penalty required under Subparagraph a, above.

        c.    If Defendants abandon work on the SEP, or fail to operate the SEP for a minimum of 5 years after the Effective Date of the Consent Decree, Defendants shall pay a

-17-

stipulated penalty of $750,000, in addition to any penalty required under Subparagraph a, above. Such penalties shall accrue as of the date specified for completing the SEP or the date performance ceases, whichever is earlier.

       d.     If Defendants fail to comply with any of the deadlines for the milestones under the schedule in Paragraph 14 of this Consent Decree for implementing the SEP, Defendants shall pay stipulated penalties for each such failure to meet an applicable milestone, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th day |
| $2,500 | 15th through 30th day |
| $5,000 | 31st day and beyond |

Such penalties shall accrue from the date Defendants were required to meet each such milestone, until compliance with the milestone is achieved.

       e.     In lieu of any and all stipulated penalties that are assessed against Defendant CEMEX under Subparagraphs a through d above, Defendant CEMEX may choose to pay a stipulated penalty equal to $1,875,000, less the total amount of stipulated penalties under Subparagraphs a through d, above, that have been previously paid by any Defendant. Simultaneously with full payment by Defendant CEMEX under this Subparagraph e, all duties and obligations of Defendant CEMEX under this 33 and Sections V (Compliance Requirements), VI (Supplemental Environmental Project), and VII (Reporting Requirements) shall terminate. Payment by Defendant CEMEX under this Subparagraph e shall not relieve Defendant St. Marys or Defendant St. Barbara of any obligations under this Consent Decree, except that the amount

-18-

paid by Defendant CEMEX under this Subparagraph e shall be credited toward any stipulated penalties owed by Defendant St. Marys or Defendant St. Barbara under Subparagraphs a through d, above.

34.    Defendant St. Marys shall pay stipulated penalties of $1,000 per violation per day for any violations of this Consent Decree other than the requirements identified in Paragraphs 7, 9, 10, 12, 13, 14 and 15, above, and in Section VII (Reporting Requirements), above.

35.    Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree. The United States, or the MDEQ, or both may seek stipulated penalties under this Section. Where both sovereigns seek stipulated penalties for the same violation of this Consent Decree, Defendants shall pay 50 percent to the United States and 50 percent to the MDEQ within 30 days after written demand by both sovereigns.  Where only one sovereign demands stipulated penalties for a violation, and the other sovereign does not join in the demand within 14 days of receiving the demand, or timely joins in the demand but subsequently elects to waive or reduce stipulated penalties for that violation, Defendants shall pay within 30 days after written demand by the sovereign the stipulated penalties due for the violation to the sovereign making the initial demand, less any amount paid to the other sovereign.  The determination by one sovereign not to seek stipulated penalties shall not preclude the other sovereign from seeking stipulated penalties.

-19-

36.     The United States or the MDEQ may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due that sovereign under this Consent Decree.

37.     Stipulated penalties shall continue to accrue as provided in Paragraph 35, above, during any period of dispute resolution, with interest on accrued penalties payable and calculated at the rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

    a.     If the dispute is resolved by agreement or by a decision of Plaintiffs that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, within 30 days of the effective date of the agreement or the receipt of the decision or order;

    b.     If the dispute is appealed to the Court and Plaintiffs prevail in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c, below;

    c.     If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

38.     Defendants shall, as directed by the United States, pay stipulated penalties owing to the United States by EFT in accordance with Section IV, Paragraph 7(a), above. Defendants shall pay stipulated penalties owing to the MDEQ in accordance with Section IV, Paragraph 7(b), above.

39.     Defendants shall not deduct stipulated penalties paid under this Section in calculating their federal or Michigan income tax.

40.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree,  Plaintiffs shall be entitled to collect interest on such penalties, as provided for in 28 U.S.C. § 1961.

41.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to Plaintiffs for Defendants' violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the Clean Air Act or the Michigan Natural Resources and Environmental Protection Act, Defendants shall be allowed a credit for any stipulated penalties paid, against any statutory penalties imposed for such violation.

### IX.  FORCE MAJEURE

42.     A "force majeure event" is any event beyond the control of Defendants, their contractors, or any entity controlled by Defendants that delays the performance of any obligation under this Consent Decree or otherwise causes a violation of any provision of this Consent Decree, despite Defendants' best efforts to fulfill the obligation.  "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the greatest extent possible.  "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

-21-

43.     Each Defendant shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time that the Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed force majeure event. Each Defendant shall also provide written notice, as provided in Section XIV of this Consent Decree (Notices), within seven days of the time that the Defendant first knew of, or by the exercise of due diligence, should have known of, the event. The notice shall state the anticipated duration of any delay; its cause(s); the Defendant's past and proposed actions to prevent or minimize any delay; a schedule for carrying out those actions; and the Defendant's rationale for attributing any delay to a force majeure event. Failure to give such notice shall preclude a Defendant from asserting any claim of force majeure.

44.     If Plaintiffs agree that a force majeure event has occurred, the Parties may agree to extend the time for the affected Defendant to perform the affected requirements for the time necessary to complete those obligations. An extension of time to perform the obligations affected by a force majeure event shall not, by itself, extend the time to perform any other obligation. Where Plaintiffs agree to an extension of time, the appropriate modification shall be made pursuant to Section XVII of this Consent Decree (Modification).

45.     If Plaintiffs do not agree that a force majeure event has occurred, or the Parties are unable to agree to the extension of time needed to perform the affected requirements of this Consent Decree, Plaintiffs' position shall be binding, unless the Defendant invokes Dispute Resolution under Section X of this Consent Decree. In any such dispute, the Defendant bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a force majeure event; that the Defendant gave the notice required by Paragraph 43; that

-22-

the force majeure event caused any delay the Defendant claims was attributable to that event; and that the Defendant exercised best efforts to prevent or minimize any delay caused by the event.

## X.  DISPUTE RESOLUTION

46.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, such procedures shall not apply to actions by Plaintiffs to enforce obligations of the Defendants that have not been disputed in accordance with this Section.

47.     Informal Dispute Resolution.  Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when a Defendant sends the United States and the MDEQ a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by Plaintiffs shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

48.     Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on Plaintiffs a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but may not be limited to, any factual data, analysis, or opinion supporting

the applicable Defendant's position and any supporting documentation relied upon by the
Defendant.

49.     Plaintiffs shall serve their Statement of Position within 45 days of receipt
of Defendant's Statement of Position.  Plaintiffs' Statement of Position shall include, but may
not be limited to, any factual data, analysis, or opinion supporting that position and all supporting
documentation relied upon by Plaintiffs.  Plaintiffs' Statement of Position shall be binding on the
applicable Defendant, unless the Defendant files a motion for judicial review of the dispute in
accordance with the following Paragraph.

50.     Defendants may seek judicial review of the dispute by filing with the
Court and serving on the United States and the MDEQ, in accordance with Section XIV of this
Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion
must be filed within 45 days of receipt of Plaintiffs' Statement of Position pursuant to the
preceding Paragraph.  The motion shall contain a written statement of the Defendant's position
on the matter in dispute, including any supporting factual data, analysis, opinion, or
documentation, and shall set forth the relief requested and any schedule within which the dispute
must be resolved for orderly implementation of the Consent Decree.

51.     Plaintiffs shall respond to the Defendant's motion within the time period
provided in the Local Rules of this Court, unless the parties stipulate otherwise.  The Defendant
may file a reply memorandum, to the extent permitted by the Local Rules or the Parties'
stipulation, as applicable.

52.     In any dispute under this Paragraph, the Defendant shall bear the burden of
demonstrating that its position clearly complies with this Consent Decree and the Clean Air Act

-24-

and that the Defendant is entitled to relief under applicable law.  Plaintiffs reserve the right to argue that their position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

53.     The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of a Defendant under this Consent Decree, not directly in dispute.  Stipulated Penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 37, above.  If the Defendant does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.  INFORMATION COLLECTION AND RETENTION

54.     The United States, the MDEQ, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry to any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States or the MDEQ in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendant St. Marys or its representative, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data pertaining to this Consent Decree; and

-25-

       e.     assess Defendants' compliance with this Consent Decree.

55.     Upon request, Defendant St. Marys shall provide EPA and the MDEQ or their authorized representatives splits of any samples taken by Defendant St. Marys.  Upon request, EPA and the MDEQ shall provide Defendant St. Marys splits of any samples taken by EPA or the MDEQ.

56.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all records and documents (including records or documents in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree.  This record retention requirement shall apply regardless of any corporate or institutional document-retention policy to the contrary.  At any time during this record-retention period, the United States or the MDEQ may request copies of any documents or records required to be maintained under this Paragraph.

57.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the MDEQ pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain records or information imposed applicable federal or state laws, regulations, or permits.

XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

58.     This Consent Decree resolves the civil claims of the United States and the MDEQ for all violations alleged in the Complaint filed in this action through the date of lodging, and for violations caused by excess particulate matter emissions at the Facility's in-line kiln/raw mill until July 30, 2006. This Consent Decree further resolves the civil claims of the United States and the MDEQ for all violations alleged in the following Findings of Violation ("FOV"), Notices of Violation ("NOV"), and Letters of Violation ("LOV"), which are attached to the Consent Decree as Attachment C: FOV EPA-02-MI-16 (9/10/2002); NOV EPA-02-MI-17 (9/10/2002); FOV EPA-02-MI-01 (12/31/2001); NOV EPA-02-MI-02 (12/31/2001); LOVs dated 02/13/01, 02/20/01, 03/20/2001, 03/26/01, 03/28/01, 07/02/01, 07/17/01, 07/19/01, 07/23/01, 11/26/01, 11/27/01, 12/20/01, 01/17/02, 02/26/02, 04/17/02, 05/31/02, 06/24/02, 07/01/02, 08/06/02, 08/28/02, 11/12/02, 02/24/03, 03/06/03, 03/24/03, 05/12/03, 06/02/03, 07/15/03, 10/17/03, 10/18/02, 10/20/03, 12/08/03, 12/17/03, 01/14/04, 01/21/04, 02/04/04, 02/09/04, 05/27/04, 10/11/2004, 10/14/04, 10/26/04, 04/06/05.

59.     This Consent Decree shall not be construed to prevent or limit the rights of the United States or the MDEQ to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified herein.

60.     Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits following the lodging of this Consent Decree; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits. This

-27-

Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Neither the United States nor the MDEQ, by their consent to the entry of this Consent Decree, warrants or avers in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Clean Air Act or Michigan's Natural Resources and Environmental Protection Act.

61.     This Consent Decree does not limit or affect the rights of Defendants or of the United States or the MDEQ against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

62.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

63.     The United States and the MDEQ reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein.  The United States and the MDEQ further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility, whether related to the violations addressed in this Consent Decree or otherwise.

## XIII.  COSTS

64.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the MDEQ shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

XIV. <u>NOTICES</u>

65.    Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

<u>To the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-08077


MARGARET M. CHIARA
United States Attorney
JENNIFER L. McMANUS
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan  49501-0208


and

RICHARD R. WAGNER, Attorney
Office of Regional Counsel
U.S. Environmental Protection
  Agency, Region V
230 South Dearborn Street
Chicago, Illinois  60604

<u>To EPA</u>:

Compliance Tracker, AE-17J
Air Enforcement and Compliance Assurance Branch
U.S. Environmental Protection Agency
77 W. Jackson Blvd.
Chicago, IL 60604

-29-

To the MDEQ:

NEIL D. GORDON (P56374)
Assistant Attorney General
State of Michigan
Environment, Natural Resources
and Agriculture Division
P.O. Box 30217
Lansing, Michigan 48909
Attorney for the Michigan Department of
Environmental Quality

JANIS DENMAN
District Supervisor
MDEQ-Air Quality Division
2100 West M-32
Gaylord, MI 49735

To Defendant St. Marys
or
To Defendant St. Barbara:

JOLANTA MALICKI
General Counsel
St. Marys Cement Group
55 Industrial Street
Toronto,
ON
M4G 3W9
CANADA

and

FREDRICK J. DINDOFFER (P31398)
Bodman LLP
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI  48226

To Defendant CEMEX:

LESLIE S. WHITE
Executive Vice President and General Counsel
CEMEX, Inc.
840 Gessner, Suite 1400
Houston, TX 77024

S. LEE JOHNSON
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226

66.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

67.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  EFFECTIVE DATE

68.     The "Effective Date" of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XVI.  RETENTION OF JURISDICTION

69.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

70.     Except as specifically provided for herein, there shall be no modifications or amendments of this Consent Decree without written agreement of the Parties to this Consent Decree and approval by this Court.  Changes to the technical and schedule provisions set forth in Paragraphs 10 or 14 or Attachment B may be made without approval by the Court upon written agreement between the Defendants and EPA.  Attachment A, Permit No. 700-77G, may be modified as permitted by MDEQ policies and procedures.

## XVIII.  TERMINATION

71.     After Defendants have maintained continuous satisfactory compliance with the requirements set forth in Paragraph 9 of this Consent Decree for a period of five years after the Effective Date of this Consent Decree, and have complied with all other requirements of this Consent Decree, including those relating to the SEP required by Section VI of this Consent Decree, and have paid the civil penalty and any accrued stipulated penalties demanded by Plaintiffs as required by this Consent Decree, Defendants may serve upon the United States and the MDEQ a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

72.     Following receipt by the United States and the MDEQ of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States and the MDEQ agree that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

73.     If the United States and the MDEQ do not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X of this Decree. However, Defendants shall not seek judicial resolution of any dispute, under Paragraph 48 of Section X, until 60 days after service of its Request for Termination.

### XIX.  PUBLIC PARTICIPATION

74.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice.

### XX.  SIGNATORIES/SERVICE

75.     Each Party's undersigned representative certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

76.     This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

77.     Defendants agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

78.     Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service

-33-

requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local

Rules of this Court including, but not limited to, service of a summons.

## XXI.  INTEGRATION/ATTACHMENTS

79.     This Consent Decree and its Attachments constitute the final, complete,

and exclusive agreement and understanding among the Parties with respect to the settlement

embodied in the Decree and supersede all prior agreements and understandings, whether oral or

written, concerning the settlement embodied herein. Other than the Attachments, which are

attached to and incorporated in this Decree, no other document, nor any representation,

inducement, agreement, understanding, or promise, constitutes any part of this Decree or the

settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

80.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States the MDEQ and

Defendants.  The Court finds that there is no just reason for delay and therefore enters this

judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII.  ATTACHMENTS

81.     The following documents are attached to and incorporated into this

Consent Decree:

"Attachment A" is Permit No. 700-77G;

"Attachment B" is a document setting forth the specifications for the SEP described in Section VI of this Consent Decree;

"Attachment C" are Findings of Violation, Notices of Violation, and Letters of Violation referenced in Paragraph 58 of this Consent Decree.

Dated and entered this __ day of _____, 2006.

_____
UNITED STATES DISTRICT JUDGE
Western District of Michigan

FOR PLAINTIFF UNITED STATES OF AMERICA:

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, D.C.  20530

DEBORAH M. REYHER
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4113

MARGARET M. CHIARA
United States Attorney

JENNIFER L. McMANUS
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan  49501-0208
(616) 456-2404

RICHARD R. WAGNER
Senior Attorney
Office of Regional Counsel
U.S. Environmental Protection
  Agency, Region V
230 South Dearborn Street
Chicago, Illinois  60604
(312) 886-7947

FOR PLAINTIFF UNITED STATES OF AMERICA:

      SUE ELLEN WOOLDRIDGE
      Assistant Attorney General
      Environment and Natural Resources Division
      United States Department of Justice
      Washington, D.C. 20530

      DEBORAH M. REYHER
      Environmental Enforcement Section
      United States Department of Justice
      P.O. Box 7611, Ben Franklin Station
      Washington, D.C. 20044
      (202) 514-4113

      MARGARET M. CHIARA
      United States Attorney

      JENNIFER L. McMANUS
      Assistant United States Attorney
      Post Office Box 208
      Grand Rapids, Michigan 49501-0208
      (616) 456-2404

      RICHARD R. WAGNER
      Senior Attorney
      Office of Regional Counsel
      U.S. Environmental Protection
        Agency, Region V
      230 South Dearborn Street
      Chicago, Illinois 60604
      (312) 886-7947

FOR THE MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY:

> MICHAEL A. COX
> Attorney General
> State of Michigan
>
> _____
> NEIL D. GORDON
> Assistant Attorney General
> Michigan Department of Attorney General
> Environment, Natural Resources
> and Agriculture Division
> P.O. Box 30217
> Lansing, Michigan 48909
> Attorney for the Michigan Department of
> Environmental Quality
> (517) 373-7540
>
> _____
> G. VINSON HELLWIG
> Chief, Air Quality Division
> Michigan Department of Environmental Quality

FOR DEFENDANT CEMEX, INC.:

> _____
> LESLIE S. WHITE
> Executive Vice-President and General Counsel
> CEMEX, Inc.
> 840 Gessner Road, Suite 1400
> Houston, TX 77024
>
> _____
> S. LEE JOHNSON
> Honigman Miller Schwartz and Cohn LLP
> 660 Woodward Avenue
> 2290 First National Building
> Detroit, MI 48226-3506

-37-

FOR THE MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY:

MICHAEL A. COX
Attorney General
State of Michigan

_____

NEIL D. GORDON
Assistant Attorney General
Michigan Department of Attorney General
Environment, Natural Resources
and Agriculture Division
P.O. Box 30217
Lansing, Michigan 48909
Attorney for the Michigan Department of
Environmental Quality
(517) 373-7540

_____

G. VINSON HELLWIG
Chief, Air Quality Division
Michigan Department of Environmental Quality

FOR DEFENDANT CEMEX, INC.:

_____

LESLIE S. WHITE
Executive Vice-President and General Counsel
CEMEX, Inc.
840 Gessner Road, Suite 1400
Houston, TX 77024

_____

S. LEE JOHNSON
Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226-3506

-37-

FOR DEFENDANT ST. MARYS CEMENT INC. (U.S.):

ERIK MADSEN
Vice-President and Chief Operating Officer

FREDRICK J. DINDOFFER
Bodman LLP
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

FOR DEFENDANT ST. BARBARA CEMENT INC.:

ERIK MADSEN
President

FREDRICK J. DINDOFFER
Bodman LLP
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226

IT IS SO ORDERED.

Dated: December 12, 2006

/s/ Wendell A. Miles

Wendell A. Miles
Senior U.S. District Judge

-38-